UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RICHARD LAWSON                                                                                          PLAINTIFF

v.                                                                            CIVIL ACTION NO. 3:12cv698-DPJ-FKB

HINDS COUNTY SCHOOL DISTRICT                                                                  DEFENDANT

ORDER

This employment-discrimination case is before the Court on Defendant Hinds County School District's Motion for Summary Judgment [37].  The key issues are whether Plaintiff Richard Lawson, an African-American public-school teacher, was constructively discharged by the District, and if so, whether he has submitted sufficient evidence of race-based intent to avoid summary judgment.  The Court finds fact questions on both issues and therefore denies summary judgment on the Title VII and § 1981 claims.  But because Plaintiff has not established any basis for municipal liability under § 1983, that claim is dismissed.

I.      Facts and Procedural History

Lawson taught high-school history at the Main Street RESTART Center under a one-year employment contract with the District.  The contract covered the 2009–2010 school year.  In the spring semester of that year, the District began a reduction in force (RIF).  So on February 1, 2010, District Superintendent Dr. Stephen Handley sent RESTART Center Principal Chad Shealy a letter directing him to eliminate two teaching positions.  Feb. 1, 2010 Letter [37-1] at 1.  By law, the School Board was required to vote on Shealy's recommendations and make final personnel decisions.

There is no dispute Shealy selected Lawson to be recommended for non-renewal and verbally conveyed that information to Lawson on or around March 25, 2010.  But dispute exists

as to what, precisely, Shealy told Lawson.  According to Shealy, he merely informed Lawson that he was recommending non-renewal to the School Board.  But Lawson recalls Shealy making it clear that Lawson "had been selected, the decision was made and that [Lawson] was selected.  So there was nothing potential about it.  It was direct."  Lawson Dep. [37-3] 10.  Lawson's account finds support in the District's EEOC position statement signed by District Superintendent Handley.  That document states that "Mr. Lawson was informed that . . . his contract would not be renewed."  District Position Statement [40-6] at 7.

According to Lawson's account of the meeting, he asked for an explanation and was told: "Mr. Lawson, you being a black man, I believe that you could easily get a job in the education system with your connection."  Lawson Dep. [37-3] 17.  Shealy then conveyed that "he felt like it would be best if [Lawson] did a resignation rather than have a nonrenewal on [his] record.  So he recommended . . . resignation."  *Id*.  Shealy also warned that "once a school district sees nonrenewal, they usually just throw your application or your resume to the side because a red flag goes up."  *Id.* at 17–18.  Lawson took the advice and submitted a resignation letter before Shealy's recommendation was presented to the School Board.  The School Board never considered whether to non-renew Lawson's contract, but it ultimately approved his resignation.

Lawson filed a charge of discrimination with the EEOC on August 3, 2010, asserting that he was "forced to resign (constructively discharged)" because of his race.  Compl. [1-2] Ex. A.  Following an EEOC determination favorable to Lawson, the parties engaged in an unsuccessful conciliation process, and the EEOC issued a right-to-sue letter on June 8, 2012.  Lawson filed suit on August 30, 2012, in Hinds County Circuit Court, asserting Title VII, § 1983, and § 1981 claims of race discrimination, as well as a state-law breach-of-contract claim.  Defendant

removed the case and, at the close of discovery, filed its motion for summary judgment. The Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III.    Analysis

A.      Federal Discrimination Claims

The substantive analysis of Lawson's race-discrimination claims under Title VII, § 1981, and § 1983 is identical. *See Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 166 (5th

Cir. 2007).  But the District's liability under § 1983 must be reviewed in light of *Monell v. Department of Social Services* and is therefore addressed separately.  436 U.S. 658 (1978).

        1.      Municipal Liability Under § 1983

Lawson asserts that the District's alleged discrimination deprived him of "rights, privileges, or immunities secured by the Constitution and laws," subjecting it to liability under § 1983.  *See Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 549–50 ("[A] public sector employee may assert claims of racially discriminatory employment practices under both Title VII and section 1983, because the Constitution provides a right independent of Title VII to be free from race discrimination by a public employer.").

Even assuming a constitutional violation, Lawson must establish a basis for municipal liability, and he may not rely on *respondeat superior*.  *Monell*, 436 U.S. at 693.  Lawson must instead prove that the District "caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or that "the constitutional deprivation is pursuant to a governmental custom, even if such custom has not received formal approval."  *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (internal quotation marks and citations omitted).  Thus, "municipal liability under [s]ection 1983 requires proof of three elements:  a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom."  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citation omitted).

Lawson appears to concede that the School Board—and not Shealy or Handley—is the sole policymaker for the District with regard to employment decisions.  Pl.'s Resp. [40] at 19–20; *see Beattie v. Madison Cnty. Sch. Dist*, 254 F.3d 595, 602 (5th Cir. 2001) (citing Miss. Code

4

Ann. § 37-7-301(p)). And though Lawson has established a question of fact as to whether Shealy told him he would not be renewed—a fact relevant to his constructive-discharge claim—he has not created such a question as to whether the School Board took any action to effectuate his termination. Rather, the undisputed record evidence demonstrates that the only action by the School Board was its vote to approve Lawson's resignation. Nor does Lawson identify any policy or custom that was the motivating force behind the violation. Absent action by the policymaker that caused the alleged constitutional violation, or some official policy pursuant to which the violation occurred, the District cannot be held liable under § 1983. The District is entitled to summary judgment on the § 1983 claim.

        2.      Title VII and § 1981 Discrimination Claims

Title VII makes it unlawful for an employer to "discharge any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). "An employee can prove discrimination through direct or circumstantial evidence," but in either case, the employee must establish that he was subjected to an "adverse employment action." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 897, 992 (5th Cir. 2005).

Lawson's success under Title VII turns on two primary issues. First, has he established an adverse employment action through constructive discharge. Second, has he presented sufficient direct evidence of discrimination to withstand summary judgment. As discussed below, the Court finds that Lawson passes both tests under Rule 56(c).

        a.      Adverse Employment Action

"[A]n adverse employment action consists of '*ultimate employment decisions* such as hiring, granting leave, discharging, promoting, and compensating.'" *Pegram v. Honeywell, Inc.*,

361 F.3d 272, 282 (5th Cir. 2004) (citing *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002)) (emphasis in original). "Where, as here, an employee resigns, []he may satisfy the discharge requirement by proving *constructive* discharge." *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997) (citation omitted) (emphasis in original). According to the Fifth Circuit Court of Appeals,

> An employee who resigns may demonstrate constructive discharge by two means. First, she can "offer evidence that the employer made her working conditions so intolerable that a reasonable employee would feel compelled to resign." *Barrow v. New Orleans Steamship Assoc.*, 10 F.3d 292, 297 (5th Cir. 1994). Second, an employee can prove constructive discharge with evidence that she was given an ultimatum requiring her to choose between resignation and termination. *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997).

*David v. Pointe Coupee Parish Sch. Bd.*, 247 F.3d 240, 2001 WL 43530, at *2 (5th Cir. 2001).

The District focuses much of its attention on the first alternative, raising various arguments related to the harassment means of establishing constructive discharge. But that is not Lawson's claim. Lawson contends that he was given an ultimatum, which is a valid legal theory. *See Faruki*, 123 F.3d at 319 (reversing summary judgment because court failed to consider "most compelling evidence of constructive discharge, viz.," that employee received ultimatum to "find another job" or face termination).[1]

---

[1] The District likewise argues that vicarious-liability standards applicable to Title VII harassment cases should be imported into the constructive-discharge analysis, but it cites no authority applying those standards under the ultimatum approach to constructive discharge. In the harassment context, the Supreme Court has looked to agency principles to craft a careful structure for analyzing employer liability. That structure was necessary because harassment falls outside the course and scope of employment. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998). But Shealy arguably had actual or apparent authority to convey the ultimatum which, under Fifth Circuit precedent, effectuated Lawson's alleged termination. *See id.* at 760 (noting that courts have "found vicarious liability when a discriminatory act results in a tangible employment action"). Absent better authority, the Court follows the approach outlined in *Faruki* and subsequent cases.

Under the ultimatum theory, Lawson must still show that "a reasonable employee would feel compelled to resign." *Faruki*, 123 F.3d at 319. The District argues that Shealy lacked authority to make the final determination and that the Board had not voted. But a fact question remains as to what Shealy told Lawson. Under Lawson's version—which the Court must credit under Rule 56—he was flatly told that he would not be renewed. Lawson Dep. [37-3] 10; *see also* District Position Statement [40-6] at 7 ("Mr. Lawson was informed that . . . his contract would not be renewed."). Lawson was allegedly given the ultimatum to resign or face non-renewal and was advised that failure to do so would adversely affect his ability to find employment. Lawson Dep. 17–18.

The Fifth Circuit has reversed summary judgment under similar facts. In *David v. Pointe Coupee Parish School District*, a public-school employee, David, suspected malfeasance by the district superintendent. 2001 WL 43530, at *1. Although the superintendent lacked authority to terminate and no official Board action had occurred, David was allegedly informed that the superintendent had recommended termination. *Id*. at *4. The Fifth Circuit concluded that David faced "an ultimatum that left her with the choice to either resign or be fired." *Id*. It therefore reversed summary judgment because the trial court had based its opinion on the finding that the workplace was not sufficiently intolerable—a finding with which the Fifth Circuit agreed. *Id*. at *5. *See also Faruki*, 123 F.3d at 319 (reversing summary judgment); *Mendoza v. City of Palacios*, No. 3:11cv390, 2013 WL 3148667, at *1 (S.D. Tex. June 19, 2013) (concluding that fact issues on whether the plaintiff was constructively discharged precluded summary judgment where the plaintiff's supervisor "demanded that [the plaintiff] resign his employment"); *Vicari v. Ysleta Indep. Sch. Dist*., 546 F. Supp. 2d 387, 413 (W.D. Tex. 2008) ("The Court concludes

7

recommending non-renewal of [the plaintiff's] contract sufficiently qualifies as an adverse employment action, although [the plaintiff] subsequently resigned her employment at the TEA hearing."); *Denner v. Tex. Dep't of Crim. Justice*, No: SA-05-CA-184-XR, 2006 WL 2987719, at *3 (W.D. Tex. Oct. 16, 2006) (denying summary judgment and holding that reasonable person could feel compelled to resign rather than face termination even though superior employee lacked authority to terminate and decision had not yet been passed "up the chain of command").[2]

In this case, the jury will hear two versions of Shealy's conversation with Lawson. If it believes Lawson's account, in which Shealy explained that Lawson's non-renewal was a done deal and that Lawson should resign or face potential black-balling, the jury could also find that a reasonable employee would feel compelled to resign. Constructive discharge is therefore a question of fact.

                b.        Direct Evidence of Discrimination

Lawson bears the burden of establishing that he was constructively discharged "because of [his] race." 42 U.S.C. § 2000e-2(a)(1). Lawson asserts that he has presented direct evidence of discrimination. "Direct evidence is evidence which, if believed, proves the fact [of discrimination] without inference or presumption." *Jones*, 427 F.3d at 992 (citation omitted). "[S]tatements or documents which show on [their] face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action are direct

---

[2]The District relies heavily upon the recent district-court decision in *Mitchell v. City of Natchez, Mississippi*, 5:11-CV-137 DCB RHW, 2013 WL 139337 (S.D. Miss. Jan. 10, 2013). But it is not clear whether the plaintiff in *Mitchell* argued the second means for proving constructive discharge because there is no evidence of an ultimatum, no discussion of the authority addressed above, and the opinion examines the intolerable-conditions means of proof. In any event, this Court follows the *Faruki* line of cases.

evidence of discrimination." *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 285, 290 (5th Cir. 2004) (citations omitted). "If an employee presents credible direct evidence that discriminatory animus at least in part motivated, or was a substantial factor in the adverse employment action, then it becomes the employer's burden to prove by a preponderance of the evidence that the same decision would have been made regardless of the discriminatory practice." *Jones*, 427 F.3d at 992 (citation omitted).

In *Krystek v. University of Southern Mississippi*, the Fifth Circuit explained that workplace comments provide sufficient evidence of discrimination if they are "1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." 164 F.3d 251, 256 (5th Cir.1999) (alteration in original) (quoting *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996)).

In this case, Lawson points to Shealy's alleged statement that he selected Lawson for non-renewal because "being a black man [Lawson] could easily get a job in the education system with [his] connection." Lawson Dep. [37-3] 17. The District never suggests that this statement is not 1) related to race; 2) proximate in time; or 3) related to the employment decision. The Court's own review confirms that the statement—if believed—meets these tests. Instead, the District argues that Shealy's comment "cannot serve as direct evidence of discrimination by the District" because Shealy was not a decisionmaker. Def.'s Rebuttal [42] at 5. But the third prong of the test is not limited to individuals with the ultimate authority to hire and fire. The question instead is whether the declarant "'possessed [the requisite] leverage or exerted influence' over the

9

ultimate decision-makers." *Hervey v. Miss. Dep't of Educ.*, 404 F. App'x 865, 873 (5th Cir. 2010) (citing *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 653 (5th Cir. 2004)).

The record is sufficient to create a question whether Shealy exercised such control. When District Superintendent Handley directed Shealy to reduce the work force, he wrote:

> You [Shealy] will need to eliminate two (2) certified teaching positions within your school. . . . It is certainly understood that these will not be easy decisions for you to make . . . . [M]ake decisions on your existing staff in the best interest of the children . . . .

Feb. 1, 2010 Letter [37-1] at 1. And as stated before, there is a question of fact whether Shealy then informed Lawson that his contract would not be renewed. A jury could find that Shealy had sufficient influence. The Court concludes that Lawson met his burden to come forth with direct evidence of discrimination at the summary-judgment stage.

Though Lawson met his burden, the District can still prevail by proving with a preponderance of evidence that it would have taken the same action anyway. *Jones*, 427 F.3d at 992. It therefore proffers a number of legitimate, non-discriminatory reasons supporting Shealy's decision to recommend Lawson for non-renewal. While a jury could agree with those reasons, the Court may not weigh the evidence at the summary judgment stage. *Curry v. Hollywood Casino Corp.*, No. 2:11cv195-SA-SAA, 2013 WL 1291762, at *7 (N.D. Miss. Mar. 28, 2013) ("Curry has provided direct evidence that, if believed by the trier of fact, shows that he was retaliated against based on his exercise of a protected right. Finding, in the face of that proffered evidence, that Hollywood instead terminated Curry based on [the proffered legitimate, non-

discriminatory reasons] would require the Court to weigh the evidence and judge credibility."). Summary judgment on the Title VII and § 1981 claims is therefore inappropriate.[3]

  B. State-Law Breach-of-Contract Claim

The District asserts that it did not breach its contract for the 2009–2010 school year because Lawson resigned. But Mississippi law recognizes that an employee with an employment contract can state a claim for wrongful discharge by alleging constructive discharge. *See Cothern v. Vickers, Inc.*, 759 So. 2d 1241 (Miss. 2000). Because a fact question exists as to whether Lawson was constructively discharged, summary judgment will be denied on the breach-of-contract claim.

IV. Conclusion

The Court has considered all the parties' arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, the motion for summary judgment is granted in part and the § 1983 claim is dismissed. The motion is otherwise denied.

**SO ORDERED AND ADJUDGED** this the 3rd day of February, 2014.

            s/ *Daniel P. Jordan III*
            UNITED STATES DISTRICT JUDGE

---

[3]The Court would likewise find that Lawson survives burden-shifting analysis. As for the final stage, it appears that Defendant's reasons were not initially conveyed to Lawson. Lawson Dep. [37-3] 17; *see Gee v. Principi*, 289 F.3d 342, 347–48 (5th Cir. 2002) (an employer's inconsistent explanations for its employment decisions at different times permits a jury to infer that the employer's proffered reasons are pretextual).